IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| INTERVENTIONAL PAIN MANAGEMENT, P.A. | § § § § § | CIVIL ACTION NO. SA-20-MC-0934 OLG |
| *Movant* | | |

**DEFENDANTS' MOTION TO COMPEL INTERVENTIONAL PAIN MANAGEMENT'S ANSWERS TO DEPOSITION BY WRITTEN QUESTIONS AND PRODUCTION OF DOCUMENTS**

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to Rules 45 and 37 of the Federal Rules of Civil Procedure, Movants/Defendants, Isidro Guerra and Molano, Inc. (hereinafter "Movants" or "Defendants") file this Motion to Compel Interventional Pain Management, P.A.'s Answers to Deposition by Written Questions and Production of Documents, and in support thereof show the Court the following:

**I. SUMMARY OF MOTION AND RELIEF REQUESTED**

1.1   Defendants request the Court enter an Order compelling Interventional Pain Management, P.A. ("Interventional Pain") to provide substantive responses to the written deposition questions relating to the amounts that Interventional Pain Management has charged, collected and accepted from patients as payment for the same services that Interventional Pain has rendered to Plaintiff Melinda Tijerina ("Plaintiff"). Defendants also request that the Court compel Interventional Pain to produce documents relating to its policies, procedures, and protocols for patient accounting and financial practices at the medical facility (redacted of any patient identifying information). The information and documents requested are directly relevant to the disputed issue in the underlying litigation of whether the charges assigned to Plaintiff for the

treatment received at Interventional Pain are reasonable. The requested discovery is proportional to the needs of the case and is in line with the Texas Supreme Court's holding *In re North Cypress Med. Ctr. Operating Co., Ltd.*, 559 S.W.3d 128, 137 (Tex. 2018).

## II. BACKGROUND

2.1     The underlying litigation[1] pending in the United States District Court for the Southern District of Texas, McAllen Division, under Civil Action No. 7:19-CV-00285 arises out of a motor vehicle accident that occurred on February 9, 2018 in Edinburg Texas, involving a vehicle operated by Plaintiff, Melinda Tijerina ("Plaintiff") and a tractor trailer operated by Defendant, Isidro Guerra.[2] Plaintiff has alleged that she "sustained serious injuries"[3] to her neck and back as a result of the accident and has sought to recover a full spectrum of damages, including past and future medical expenses, past and future lost wages, and past and future physical impairment.[4] In discovery, Plaintiff produced medical and billing records indicating that she received extensive medical treatment at Interventional Pain Management, including three lumbar spine epidural steroid injections and two cervical spine epidural steroid injections.[5] Plaintiff was charged $23,500 for the nine (9) medical visits to the facility.[6]

2.2     On July 9, 2020, Defendants issued a Notice of Intention to take Deposition by Written Questions of the Corporate Representative of Interventional Pain Management ("the Notice"), scheduled to take place fourteen days after service of the Notice.[7] Defendants attached

---

[1] *Melinda L. Tijerina v. Isidro Guerra and Molano, Inc.*, In the United States District Court for the Southern District of Texas, McAllen Division, Civil Action No. 7:19-CV-00285.
[2] *See* Exh. A – Plaintiff's Original Petition at §IV (Dkt. No. 1-3) filed in Civil Action No. 7:19-CV-00285.
[3] *Id*.
[4] *Id*. at §VI.
[5] *See* Exh. B – Plaintiff's billing records from Interventional Pain Management.
[6] *Id.*
[7] *See* Exh. C – Notice of DWQ with Subpoena to Produce Documents.

to the Notice the Direct Questions Propounded to the Witness[8] along with a Subpoena to Testify[9] and a Subpoena to Produce Documents.[10] The Direct Questions propounded on the witness inquired into the amounts that Interventional Pain has charged, collected and accepted from other patients as payment for the same services that Interventional Pain rendered to Plaintiff.[11] The Subpoena to Produce Documents requested that the medical provider produce documents relating to the facility's policies, procedures and protocols for determining how much to charge, collect and accept from other patients as payment for the same services that Interventional Pain provided to Plaintiff.[12]  The requests specifically excluded a request for any patient identifying information.

       2.3      On August 11, 2020, Interventional Pain filed a Motion for Protective Order of Interventional Pain Management ("Interventional Pain's Motion"), opposing the discovery.[13] Interventional Pain's Motion included numerous unfounded objections and failed to include any substantive answers to most of the direct questions.[14] Specifically, Interventional Pain asserted objections with no substantive responses to questions 1-11; 13-21; 25-27; 38-73.[15] Likewise, Interventional Pain failed to produce any documents responsive to the Subpoena to Produce Documents.[16] Interventional Pain's Motion alleged that the information and documents requested "are irrelevant to the treatment provided to Ms. Tijerina," and that the Court should "strike the documents requested…or, alternatively, sustain Interventional's objections and quash the

---

[8] *Id*.
[9] *Id*.
[10] *Id*.
[11] *Id*. at questions No. 1 – 73.
[12] *Id*.
[13] Motion for Protective Order of Movant Interventional Pain Management, P.A. (Dkt. No. 1).
[14] *Id*.
[15] *Id*.
[16] *Id*.

DWQ."[17] Court intervention has now become necessary to ensure Interventional Pain's compliance with the discovery process.

### III. ARGUMENT AND AUTHORITIES

3.1     Federal Rule of Civil Procedure 26(b)(1) permits "discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Further, the "information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "The rules governing discovery are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials." *Moore v. The Shaw Group, Inc.*, No. 12-757, 2015 WL 4936261, at *3 (M.D.La. Aug. 18, 2015). If a party or non-party fails to cooperate with discovery, the requesting party may move for an order compelling complete responses to the written deposition questions and the production of responsive documents. FED. R. CIV. P. 37(a)(3)(B)(i); FED. R. CIV. P. 45(d)(2)(B)(i).

   a. **The information requested from Interventional Pain Management by written deposition questions is relevant and discoverable under The Texas Supreme Court's holding *In Re North Cypress Medical Center Operating Co., Ltd*.**

3.2     The Texas Supreme Court noted in *Haygood v. Garza De Escobedo* that "Damages for wrongful personal injury include the reasonable expenses for necessary medical care, but it has become increasingly difficult to determine what expenses are reasonable." 356 S.W.3d 390, 391 (Tex.2011). "Health care providers set charges they maintain are reasonable while agreeing to reimbursement at much lower rates determined by insurers to be reasonable, resulting in great disparities between amounts billed and payments accepted." *Id.* Consequently, "A two-tiered structure has evolved: "list" or "full" rates sometimes charged to uninsured patients but frequently uncollected, and reimbursement rates for patients covered by government and private insurance."

---

[17] *Id.* at ¶¶5-7.

707300 (8347.176)                                                                                                                              4

*Id*. at 393. "Hospitals, like health care providers in general, "feel financial pressure to set their 'full charges'…as high as possible, because the higher the 'full charge' the greater the reimbursement amount the hospital receives since reimbursement rates are often set as a percentage of the hospital's 'full charge.'" *Id*. The Supreme Court concluded that "section 41.0105 limits a claimant's recovery of medical expenses to those which have been or must be paid by or for the claimant," not those that have been charged. *Id*. at 398.

      3.3      The Texas Supreme Court expounded on *Haygood* in the case *In re North Cypress Medical Center Operating Co., Ltd.*, No. 16-0851, 2018 Tex. LEXIS 346, 2018 WL 1974376 (Tex. April 27, 2018).  In *North Cypress*, the Court addressed whether information regarding a hospital's reimbursement rates from private insurers and public payers for services the hospital provided to an uninsured plaintiff is relevant and discoverable to ascertain whether the charges the uninsured plaintiff was charged exceeded a reasonable and regular rate for the hospital services provided. The Court reasoned that "the reimbursement rates sought, taken together, reflect the amounts the hospital is willing to accept from the vast majority of its patients as payment in full for such services" and that "such amounts are at least relevant to what constitutes a reasonable charge." *In re North Cypress* at 2. The Court further reasoned as follows:

> And because of the way chargemaster pricing has evolved, the charges themselves are not dispositive of what is reasonable, irrespective of whether the patient being charged has insurance. By contrast, a hospital's reimbursements from private insurers and public payers comprise the vast majority of its payments for services rendered. We fail to see how the amounts a hospital accepts as payment from most of its patients are wholly irrelevant to the reasonableness of its charges to other patients for the same services.

*Id*. at 10.  In affirming that the trial court did not abuse its discretion in granting an order requiring the medical facility to produce information regarding its reimbursement rates from private insurers and public payers for the services it provided to the uninsured plaintiff, the Court concluded that

"the amounts North Cypress accepts as payment for those services from other patients, including those covered by private insurance and government benefits, are relevant to whether the charges to [Plaintiff] were reasonable and are thus discoverable." *Id.* at 17.

3.4 Since the *North Cypress* decision, Federal Courts in Texas have affirmed that in cases where reasonableness of a plaintiff's incurred medical expenses is at issue, "a party may be permitted to discover information regarding reimbursement rates a healthcare provider obtains from a private insurer and/or public payers with respect to the services provided to the plaintiff." *Eyer v. Rivera*, No. SA-17-CV-01212-OLG, 2019 WL 626140, at 1 (W.D. Tex. Jan. 7, 2019)(granting motion to compel answers to deposition by written questions and production of documents with respect to reimbursement rates for various services performed); *see also Ochoa v. Mercer Transp. Co.*, No. 5:17-CV-1005-OLG, 2018 WL 6220155 at 1-2 (W.D. Tex. June 8, 2018)(denying motion to quash with respect to reimbursement rates from private insurers).

3.5 The holding in *North Cypress* and its federal progeny is also applicable to patients who seek medical treatment outside traditional private insurance or Medicare reimbursement situations. This frequently arises in personal injury litigation. A plaintiff seeks medical treatment from a medical provider, often one they are directed to by their personal injury counsel, who agrees to provide the medical treatment under a "letter of protection". Under the letter of protection, the plaintiff's attorney guarantees the medical provider will be paid for their services from any settlement or judgment in favor the plaintiff. However, the plaintiff's attorney does not accept any responsibility or liability for the cost of the medical treatment. The medical provider then treats the plaintiff and records the charges for the medical services knowing full well that payment rests almost entirely on a settlement or judgment in favor of the plaintiff. While the plaintiff remains responsible for the medical charges, in practical effect, this has the medical provider working on a

"contingent fee arrangement" when it provides its services to the plaintiff since there is generally no other avenue for payment. These charges for the medical services provided to the patient are then memorialized by the medical provider in its records as its "reasonable charge" for those services, and are then further set out in the medical provider's affidavits and/or sworn testimony and submitted to the court in the effort to establish the amount of "reasonable charges" for the medical procedures for the patient. This entire process is set out in the Texas Civil Practices and Remedies Code: Chapter 18, and is routinely used by plaintiffs' attorneys in personal injury cases in both Texas state and federal courts. The personal injury plaintiff then proceeds to litigate the plaintiff's case, and if the plaintiff settles the case or receives a judgement award, the plaintiff can then proceed to pay some amount to the medical provider out of their settlement/judgment for the medical services. In practice the amount that is ultimately paid to the medical provider for the services is heavily negotiated by the plaintiff's personal injury attorney after any settlement or judgment.

      3.6    While denominated as "non-retained" experts, the medical providers are submitting what is claimed to be expert testimony on what constitutes a "reasonable charge" for the services that they have recommended or provided to the plaintiff. Plaintiffs identify these non-retained medical providers as experts and submit their "opinions" in order to establish their claims and alleged damages. Accordingly, the defendant has an absolute right to contest that "reasonable charge" assertion and develop evidence to present to the jury to establish the "expert's" testimony should not be accepted. Frequently the process to controvert the providers' claims of a "reasonable charge" are presented by billing and coding experts who have evaluated various databases of charges for the same services or, by other doctors. Plaintiffs' counsel routinely attack these controverting experts' methodology, and the information that they rely upon as not being reliable

or reflective of what the medical provider in the instant case can set as a "reasonable charge".

3.7     A reasonable charge (price) is that price that a willing seller and a willing buyer agree on, with neither being under any obligation to do so.  Accordingly, in this case what this seller (medical provider) has agreed on with other buyers (patients) as the amount that is accepted for the same medical service is clear, relevant and direct evidence of what a "reasonable charge" would be in this matter.  <u>The discovery requests in this case are specifically designed to obtain information from the same medical provider on the amounts that they have charged, collected and, most importantly, the amount that the medical provider have ultimately accepted for the exact same medical procedures that they have recommended or performed for the plaintiff in this case.</u>  What Interventional Pain has willingly accepted as payment from others for the same medical procedure is not only relevant, in may be the best evidence of what this medical provider actually accepts as a "reasonable charge" for the medical procedure.  The amount that a medical provider actually accepts for the services is the best evidence of a reasonable charge.  Merely placing an aspirational value on a good or service in no way reflects what is the reasonable value.  Until a buyer pays an amount, any statement of what is the "reasonable value" is simply a guess or hypothetical value.

    **b.  The information and document requests to Interventional Pain Management are reasonably tailored to the litigation and do not seek confidential information.**

3.8     Defendants' discovery requests in this case are reasonably tailored to the underlying litigation and do not seek any confidential or privileged information.  The only information requested in the Defendants' written deposition questions and Subpoena to Produce Documents[18] relates to the amounts that Interventional Pain charged, collected and then ultimately accepted as

---

[18] *See* Exh. C – Notice of DWQ with Subpoena to Produce Documents.

payment from other patients for the exact same medical procedures it provided or recommended to Plaintiff.[19] The timeframe of the information requested is limited to two years prior to the date of the request in order to obtain information where Interventional Pain has provided services to other personal injury plaintiffs who have then settled their cases and made payment to Interventional Pain.

3.9     As noted above, Interventional Pain has provided medical care and services to the Plaintiff in the underlying case.[20]  Plaintiff has produced medical and billing records from this medical provider and has designated doctors from this facility (i.e. Dr. Gary Kao, M.D.) as "non-retained" experts whose opinions are expected to be introduced at the trial of the underlying case.[21] Therefore, there is no dispute that Plaintiff intends to rely on Interventional Pain as an "expert" and to present its opinions on what is a "reasonable charge" for the medical services.  Therefore, evidence that relates to whether or not Interventional Pain's claimed "reasonable charges" are, in fact, reasonable, relevant, and discoverable.

3.10    Since this information is unquestionably relevant, the only issue is whether or not discovery should be prohibited on other grounds.  Mindful of the issues relating to patient confidentiality and the providers concerns over the asserted confidentiality of insurance reimbursement rates, Defendants have narrowly tailored their discovery requests.  Specifically, the discovery requests specifically exclude any and all patient identifying information such as name, address, phone, SSN, etc.[22]  Similarly, while some of the information may constitute the amount that an insurance company has reimbursed/paid the medical provider, there is no request for information or documents that would tie the amount charged, collected or accepted for one of the

---

[19] *See* Exh. C.
[20] *See* Exh. B.
[21] *See* Exh. D – Plaintiff's Expert Disclosures.
[22] *See* Exh. C.

medical procedures to any specific party or person, including any insurer, who actually paid any amount for the medical procedure. In fact, there is no request that any person or entity who has paid any amounts for any of the same CPT code medical procedures be identified in any way. Defendant seeks only the number of times the same medical procedure was performed, the amount charged each time, the amount collected each time, whether that amount was accepted as final payment and information and documents that reflect whether or not the provider has waived, written off or is still seeking to collect any further amounts beyond what was paid.[23] Not a single name or personal identifying information is requested so while any specific "raw" payment number made by an insurer may be considered confidential, it is only confidential if that payment amount/number can be tied to a particular insurer or payor. The manner in which Defendants have requested such payment information cannot be identified as a payment from any insurer, from Medicare or from a private pay patient. Accordingly, no confidential information is being disclosed. However, the requested information will reveal whether or not the medical provider routinely and willingly accepts as final payment amounts that are different from the amount it alleges is a "reasonable charge" for the medical procedure.

      3.11    Evidence that a medical provider is routinely and willingly accepting amounts that are far less than the amount it claims is the "reasonable charge" is directly relevant to what is actually a reasonable charge and precisely the type of evidence that should be presented to and considered by a jury that is asked to evaluate medical charges, an area that is not within the average juror's knowledge.

---

[23] *Id*.

## IV. REQUEST FOR RELIEF

4.1    Defendants, Molano, Inc. and Isidro Guerra, respectfully requests that this honorable Court enter an Order compelling the designated representative of Interventional Pain Management, P.A. to produce complete substantive responses to the deposition by written questions within fourteen (14) days of the signing of the Order. Defendant further requests the Court enter an Order compelling Interventional Pain Management to produce documents responsive to the Subpoena to Produce Documents accompanying Defendant's Notice of Intention to take Deposition by Written Questions within fourteen (14) days of signing of the Order.

## V. CERTIFICATE OF CONSULTATION

5.1    Pursuant to Rule 37(a)(1), Defendants certify that Defendants have in good faith conferred with counsel for Interventional Pain Management, P.A. in an effort to resolve the discovery issues without court intervention but has not been successful.

Respectfully submitted,

**RAY | PENA | MCCHRISTIAN P.C.**
A Professional Corporation
One Riverwalk Place
700 North St. Mary's Street, Suite 800
San Antonio, Texas 78205
(210) 341-3554
(210) 341-3557 Fax

By:   /s/ H.L. Buddy Socks
**H.L. BUDDY SOCKS**
bsocks@raylaw.com
State Bar No. 18819800
Federal Bar No.: 11943
**JOSEPH G. PEÑA**
State Bar No.: 24052898
jpena@raylaw.com
*Attorneys for Defendants*
*Isidro Guerra and Molano, Inc.*

## **CERTIFICATE OF SERVICE**

In compliance with the Federal Rules of Civil Procedure, I, Harold L. Buddy Socks, certify that on this **21st** day of **August**, **2020**, a true and correct copy of the foregoing document filed electronically with the clerk of the Court in accordance with the Federal Rules of Civil Procedure, is served on the party or attorney electronically pursuant to the Federal Rules of Civil Procedure, or if the email address of the party or attorney is not on file with the electronic filing manager then service is accomplished pursuant to the Federal Rules of Civil Procedure.

The following parties or attorney(s) are served with the foregoing document:

***Via E-Service and/or Email***
Adriaan T. Jansse, MD, JD
JANSSE LAW
P.O. Box 791215
San Antonio, Texas 78279
aj@jansselaw.com
*Attorney for Movant, Tri-City Pain Associates*

***Via E-Service and/or Email***
Thomas J. Henry
Bart Behr
LAW OFFICES OF THOMAS J. HENRY
5711 University Heights, Ste. 101
San Antonio, Texas 78249
210-656-100
Bbehr-svc@thomasjhenrylaw.com
*Attorneys for Plaintiff, Melinda L. Tijerina*

/s/ H.L. Buddy Socks
**H.L. Buddy Socks**